UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL LEMON AND DARYL
LEMON,

      Plaintiffs,

v.

HARTFORD INSURANCE
COMPANY OF THE MIDWEST,

      Defendant.
_____/

Case No:  2:23-cv-01140-JLB-NPM

## ORDER

This insurance dispute arises from damage to Michael Lemon and Daryl Lemon's (collectively, Plaintiffs') home during Hurricane Ian.  Following the storm, Plaintiffs submitted an insurance claim to Hartford Insurance Company of the Midwest (Defendant).  Plaintiffs and Defendant disagree on the amount due under the insurance policy.  Accordingly, Plaintiffs brought this action alleging breach of contract. (Doc. 5).  Defendant now moves for summary judgment.  (Doc. 51).  Plaintiffs responded.  (Doc. 54).  After careful review of the Complaint, the parties' briefing, and the entire record, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment.

### BACKGROUND

Viewing the facts in the light most favorable to Plaintiffs, the nonmoving party here, the facts are as follows:  Plaintiffs submitted an insurance claim for damage to their home following Hurricane Ian under Policy 55RBF628837.  (Doc. 42

at ¶¶ 4–8). The claim reported wind damage to the roof, lanai, and pool heater. (*Id.* at ¶ 7). That same day, Defendant acknowledged the claim and sent Plaintiffs a letter explaining how payment would be issued for covered losses. (*Id.* at ¶ 8; Doc. 47 at 63). Defendant's "Estimator," Mr. Alex Tsai, inspected the property and prepared a repair estimate for the observed covered damage. (*See* Doc. 42 at ¶11; Doc. 42-3). Specifically, Mr. Tsai's estimate set forth an observed covered loss of $2,049.14, and Defendant submitted a payment to Plaintiffs in that amount. (Doc. 42 at ¶¶ 10–11; Doc. 47-1 at 66). After application of the policy's $5,500 deductible and the Actual Cash Value ("ACV") calculation, the $2,049.14 payment derived from the repair estimate broke down as follows: "$1,521.78 for the Dwelling, $274.78 for the Contents, and $252.58 for the Other Structures." (Doc. 42 at ¶11).

A week later, Mr. Lemon provided Defendant with an estimate/proposal from Colonial Roofing, along with an unsigned, $44,932 contract between himself and Colonial Roofing to replace *the entire roof* of the home.[1] (Doc. 42 at ¶ 12; Doc. 47 at 14). Defendant then retained Donan Engineering to reinspect the property in response to Mr. Lemon's concerns about replacing the entire roof. (Doc. 42 at ¶ 13). Other than identifying two damaged roof tiles, Donan Engineering found no other signs of damage to the remaining roof tiles or the roof tiles' underlayment. (*Id.* at ¶¶ 13–15).

Plaintiffs subsequently retained Rodney Buvens from Archer Adjusting &

---

[1] Mr. Lemon did *not* sign the contract with Colonial Roofing prior to filing this litigation. (Doc. 47-1 at 14, 65).

Appraisal to prepare an estimate ("the Archer estimate") of their losses. (Doc. 47-1 at 63, 68–70). The Archer estimate provides actual cash value ("ACV")[2] and replacement cost value ("RCV")[3] estimates. (Doc. 44-1 at ¶¶ 5,7; Doc. 49-1 at 149–51, 153–54). The Archer ACV-derived estimate includes costs for matching, code compliance, loss assessment damages, and costs to repair *pre-existing damage* to the kitchen ceiling. (Doc. 49-1 at 94–95, 120, 131–32, 135, 146, 149–51). Additionally, Byron Anderson, the Plaintiffs' causation expert, testified that he factored in Florida Building Code compliance and matching to conclude that a complete roof replacement is necessary. (Doc. 48-1 at 133–35). Anderson also testified that his inspection revealed several areas of damaged roof tiles and a deteriorated underlayment. (Doc. 48-1 at 86–87, 100–01, 129, 165).

Before bringing this action, the only documentation Plaintiffs provided Defendant regarding repairs performed was for temporary work, which Defendant reimbursed. (Doc. 42 at ¶ 18). No other repairs have been performed before bringing this action. (Doc. 47-1 at 83–84).

After removal from state court, the operative complaint alleges breach of contract for "fail[ure] to pay all benefits due" under the Policy and "[d]enying coverage for all or a portion of the . . . loss," including denying coverage for "full and complete replacement of the . . . roof[.]" (Doc. 5 at ¶¶ 17–21). Defendant moves for summary judgment, arguing that the Policy's Coverage provision "insur[ing]

---

[2] The actual cash value represents "the replacement cost minus depreciation." *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 191 (11th Cir. 2021).
[3] The replacement cost value is the replacement cost of Plaintiff's property without deductions for depreciation. *See id.*

3

against risk of direct physical loss" entitles Plaintiffs only to ACV—not RCV, matching, pre-existing damage, or Ordinance or Law expenses.  (Doc. 42-1 at 39; *see generally* Doc. 51).  Plaintiffs responded in opposition.  (Doc. 54).

## LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court."  *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 2011 WL 5877505, at *3 (M.D. Fla. Nov. 23, 2011) (citations omitted).

"A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case" and "[a]n issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted).

In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-

movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted).

## DISCUSSION

To establish a breach of contract claim under Florida law,[4] Plaintiffs must show "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted). When "the terms of an insurance contract are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (citations omitted).

While Plaintiffs "do not dispute ACV is the [appropriate] damage evaluation," they argue that "the correct ACV valuation remains to be determined[.]" (Doc. 54 at 10). Plaintiffs rely on the Archer estimate and Bryon Anderson's evaluation— Plaintiffs' causation expert—which both consider costs for matching, code compliance, and pre-existing damages. (Doc. 49-1 at 94–95, 120, 131–32, 135, 146, 149–51; Doc. 48-1 at 133–35). The Court agrees with Defendant that Plaintiffs are not entitled to damages in excess of ACV. However, there remains a genuine issue of material fact as to the scope of direct physical damage to Plaintiffs' property.

### I.     Plaintiffs are not entitled to RCV or matching costs.

The Policy's Coverage provision states that Plaintiffs are "insure[d] against risk of direct physical loss to property[.]" (Doc. 42-1 at 39); *see Vazquez v. Citizens*

---

[4] "State law governs a diversity action concerning the interpretation of an insurance contract." *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted).

5

*Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020) ("'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.") (quoting *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017)). And the Policy's Loss Settlement provision provides that Defendant "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (Doc. 42-1 at 45). ACV is defined as "replacement cost minus normal depreciation." *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (alteration in original) (quotation omitted); *CMR Constr. & Roofing*, 843 F. App'x at 191. Thus, costs incurred to match new and existing materials are not included in ACV. *Vazquez*, 304 So. 3d at 1285; *see Ocean View Towers Ass'n v. QBE Ins. Corp.*, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011) (finding that a policy covering only direct physical loss "does not cover the replacement of undamaged property to ensure 'matching'").

Plaintiffs dispute that the Policy covers only direct physical loss. In doing so, Plaintiffs reason that the Policy "does not specifically contradict" Florida Statute § 626.9744, which provides:

> *Unless otherwise provided by the policy*, when a homeowner's insurance policy provides for the adjustment and settlement of first-party losses based on repair or replacement cost, the following requirements apply:
> . . .
> (2)   When a loss requires replacement of items and the *replaced* items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement of items in adjoining areas. In determining the extent of the repairs or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost, the remaining

6

useful life of the undamaged portion, and other relevant factors. (Doc. 54 at 4–5) (citing Fla. Stat. 626.9744) (emphasis added). However, the Policy does contradict the statute because it provides coverage only for "direct physical loss." (Doc. 42-1 at 39). Thus, the statute is inapplicable. Even if it were applicable, Plaintiffs are ineligible to recover under the statute because it contemplates only "replaced" items that do not match, and it is undisputed that Plaintiffs did not replace or repair damaged items prior to filing this action. (Doc. 47-1 at 83–84); *S. Co-op Dev. Fund v. Driggers*, 527 F. Supp. 927, 928 (M.D. Fla. 1981) ("[T]he right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted.") (citation omitted); *Derouin v. Universal Am. Mortg. Co.*, 254 So. 3d 595, 602 (Fla. 2d DCA 2018) (citing *Voges v. Ward*, 98 Fla. 304, 123 So. 785, 793 (1929)) (same); *Mack v. Hyundai Motor Am. Corp.*, 346 So. 3d 661, 666 (Fla. 2d DCA 2022) ("A plaintiff's right to sue is determined by the facts existing at the time suit is filed.") (citation omitted).

Next, though Plaintiffs insist that they agree ACV is the correct evaluation, they argue that Florida Statute 627.7011(3) "does not operate as a limitation on a policyholder's remedies for an insurer's breach of an insurance contract." (Doc. 54 at 11–12) (quoting *Citizens Prop. Ins. Corp. v. Tio*, 304 So. 3d 1278, 1280 (Fla. 3d DCA 2020)). The statute states:

> For a dwelling, the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs *as work is performed and expenses are incurred*. If a total loss of a dwelling occurs, the insurer shall pay the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant

to s. 627.702.

Florida Statute 627.7011(3) (emphasis added). Again, this statute requires Plaintiffs to have performed work and incurred expenses, which Plaintiffs did not do prior to filing suit.[5] (Doc. 47-1 at 83–84). Thus, insofar as Plaintiffs rely on this statute for damages exceeding ACV, they fail.

Interestingly, Plaintiffs attempt to support their argument by distinguishing between a coverage dispute and a coverage determination. (Doc. 54 at 12) (citing *Citizens Prop. Ins. Corp. v. Tio*, 304 So. 3d 1278, 1280 n.2 (Fla. 3d DCA 2020)) (explaining that the case before the court where the insurance company determined losses were not covered is different than in *Vazquez* where the dispute was whether matching was included in the already determined coverage). The Court is unpersuaded. Although the distinction noted by Plaintiffs is correct, they fail to explain how it changes the analysis. The *Vazquez* court held that the policy's plain language and Florida Statute 627.7011(3) does *not* include matching as part of the replacement cost. *Vazquez*, 304 So. 3d at 1285.

Because the Policy does not provide for RCV or matching costs, Defendant

---

[5] Plaintiffs rely on *7635 Mandarin Drive, LLC v. Certain Underwriters at Lloyd's, London, Subscribing to Pol'y No. B050719MKSC000018-00*, 392 So. 3d 592, 598 (Fla. 4th DCA 2024), for the proposition that they "were [not] required to provide the Defendant contracts or invoices prior to filing suit to repair all of the damage to their home[.]" *See* Doc. 54 at 12. But *7635 Mandarin Drive* dealt with whether the insurer wrongfully failed to appoint an appraiser, thus breaching the contract—it did not address whether the insured incurred expenses. *See* 392 So. 3d at 597–98. In any case, Plaintiffs have misunderstood Defendant's argument. Defendant correctly argues that Plaintiffs must have incurred expenses or performed work to receive any damages beyond ACV, in accordance with the plain language of the Policy, Florida Statute 626.9744, and Florida Statute 627.7011(3). Plaintiffs do not dispute that they failed to incur expenses and did not make repairs prior to filing this action. (Doc. 47-1 at 83–84).

8

could not have breached the contract by *not* including matching in its coverage determination.

## II. Plaintiffs are not entitled to Ordinance or Law-related expenses.

"'Ordinance and Law' is the cost of bringing any structure . . . into compliance with applicable ordinances or laws." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th DCA 2013). Because Plaintiffs have not incurred any Ordinance or Law expenses, they cannot recover under that Policy provision, which provides that the insured "may use up to 10% of the limit of liability that applies to Coverage A for the increased costs *you incur* due to the enforcement of any ordinance or law."[6] (Doc. 42-1 at 39) (emphasis added).

While Plaintiffs do not dispute that they failed to incur expenses prior to filing this action, they argue that post-litigation expenses have since been incurred because they signed a contract with Colonial Roofing to replace the entire roof of their home. (Doc. 54 at 13–14; Doc. 54-8 at ¶ 5). Plaintiffs argue that because "'to incur' means to become liable for the expense, but not necessarily to have actually expended it," the newly signed post-litigation contract is sufficient. *See* Doc. 54 at 13–14 (quoting *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007)). It is not. Again, the Court must look at the facts "as they exist[ed] when the suit was instituted." *Driggers*, 527 F. Supp. at 928 ("[T]he right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted.") (citation omitted); *Derouin*, 254 So. 3d at 602 (citing *Voges*, 98 Fla. at 330) (same); *Mack*, 346

---

[6] According to the Policy, Coverage A "covers [the insured's] dwelling" and "applies to real property owned by [the insured]." (Doc. 42-1 at 10).

So. 3d at 666 ("A plaintiff's right to sue is determined by the facts existing at the time suit is filed.") (citation omitted).  Because Plaintiffs did not incur expenses *before* filing this action, the Court cannot consider that they signed a contract for roof repairs after commencement of this litigation.

On these facts, Plaintiffs are not entitled Ordinance or Law damages.

### III. **Plaintiffs are not entitled to payment for pre-existing damage**.

Plaintiffs claim Anderson's testimony that the damage to the kitchen ceiling existed since at least 2016—six years before Hurricane Ian—was taken out of context because he also testified that the storm would have caused an existing problematic area to leak again.  (Doc. 54 at 4; Doc. 45-1 at 155).

The burden is on Plaintiffs to "establish[] a loss apparently within the terms of the policy" by showing that the loss is a "fortuitous loss[] not resulting from misconduct or fraud" and the policy does not "contain[] a specific provision expressly excluding the loss from coverage."  *Divine Motel Grp., LLC v. Rockhill Ins. Co.*, 655 F. App'x 779, 781–82 (11th Cir. 2016) (citations omitted).  Plaintiffs have failed to carry that burden.  Indeed, the only information Plaintiffs have provided to support coverage of the pre-existing damage is Anderson's testimony that the hurricane would have caused the "historic leak . . . to leak again."  (Doc. 45-1 at 155).

Further, the Policy's Loss by Windstorm During a Hurricane provision provides that "coverage for loss caused by the peril of windstorm during a hurricane . . . includes loss to . . . [r]ain" but explains that this coverage applies only "[i]f the direct force of the windstorm damages the building, *causing an opening in a roof or*

10

*wall* and the rain . . . enters through this opening." (Doc. 42-1 at 73) (emphasis added). Plaintiffs have failed to present evidence demonstrating that the hurricane caused the opening in the roof. In fact, when asked whether he was attributing the "drywall/ceiling cracks in the kitchen" to Hurricane Ian, Anderson responded that "this is the same area in which . . . we know that there was a prior leak, and we know that it leaked again during Hurricane Ian." (Doc. 45-1 at 127).

This is similar to the situation in *Pine Island Shopping Plaza at Sunrise, LLC v. Westchester Surplus Lunes Ins. Co.*, No. 9:16-CV-61303-WPD, 2017 WL 6949217, at *3 (S.D. Fla. Sept. 25, 2017), where the policy declined coverage for interior damage unless the damage was "first sustain[ed] by a Covered Cause of Loss to its roof or walls through which the rain . . . enter[ed]." The court found that the policy did "not cover rain as an independent Covered Cause of Loss," so "[i]f the roof was in disrepair and water intruded through areas of pre-existing roof leaks . . . then the interior damage is not covered." *Id.* at *4–5; *see Divine Motel Grp., LLC*, 655 F. App'x at 783 (holding that rain was not a covered loss where plaintiff did "not point[] to any evidence that the . . . wall was, in fact, damaged during the storm").

Thus, Plaintiffs are not entitled to recover for any pre-existing damage to the kitchen ceiling.

**IV.    Defendant did not waive defenses relating to ACV**.

Plaintiffs argue that Defendant has waived ACV defenses because "[i]f an insurance carrier had sufficient information at the time of its coverage determination to assert certain policy conditions or exclusions, yet did not do so, the

11

carrier may not later assert that policy language as a defense to coverage." (Doc. 54 at 14–15) (citing *Trans Ocean Container Corp. v. Yorkshire Ins. Co. "C" Acct.*, 81 F. Supp. 2d 1340, 1347 (S.D. Fla. 1999)).

However, *Trans Ocean Container Corp.* was reversed by *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1309 (11th Cir. 2001). The *Transamerica* Court reasoned that "English law does not require insurers to specify all grounds for denial of coverage in a declinat[ion] letter." *Id.* (citation omitted). The Court further explained that "an insurer cannot waive a policy exclusion where coverage otherwise would not exist." *Id.* (citations omitted).

Here, Plaintiffs rely on the fact that Defendant never provided an ACV valuation for the claim as a reason for waiver. (Doc. 54 at 14–15). Even if Defendant were required to provide such a valuation, it cannot waive the argument that Plaintiffs are owed only ACV damages because the Policy establishes that coverage beyond ACV does not exist at this stage.

**V.     There is a genuine dispute as to the scope of damage**.

There remain genuine issues of material fact as to the scope of direct physical losses caused by the storm.

Plaintiffs argue that there is a dispute because "Anderson testified the Plaintiffs' roof system requires complete replacement[.]" (Doc. 54 at ¶ 8) (citing Doc. 48-1 at 132). Anderson reasoned that "the underlayment is aged and deteriorated," and no tiles are available that match the roof's undamaged tiles. (Doc. 48-1 at 132–44). As the Court previously determined, however, the Policy does not cover costs

for matching.  *See supra* Part I.  And Plaintiffs have not met their burden to show that there is a genuine dispute as to the roof's underlayment.

Though Mr. Lemon testified that the underlayment of the roof must be replaced based on what "roofing contractors" have told him and "from what [his] neighbors have been told who are getting new roofs," Defendant's inspector found "no signs of damage to the underlayment."  (Doc. 47-1 at 67–68; Doc. 42 at ¶ 14).

Indeed, Plaintiffs have not shown that Hurricane Ian caused "direct physical loss" to the roof's underlayment.  (Doc. 42-1 at 39).  "A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use[.]"  *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 510 F. Supp. 3d 1116, 1122 n.10 (M.D. Fla. 2021) (quoting *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020)); *Sky Harbor Atlanta Ne., LLC v. Affiliated FM Ins. Co.*, No. 21-11329, 2024 WL 4370727, at *8 (11th Cir. Oct. 2, 2024) (same).

At best, Plaintiffs' expert, Anderson, testified that their twenty-four-year-old roof "is nearing the end of its life expectancy" and the underlayment's "[natural] deterioration process" would be further deteriorated in areas where the hurricane made contact with dislocated roof tiles.  (Doc. 48-1 at 100–01).  However, Anderson did not observe the allegedly affected underlayment to compare with the unaffected, covered underlayment.

13

Further, Plaintiffs provide no evidence that the hurricane caused the underlayment to become unsatisfactory. Anderson testified that "the condition of degraded . . . adhered underlayment would have been present prior to [Hurricane] Ian." (Doc. 48-1 at 129). Buvens likewise testified that the underlayment condition "appeared to be consistent with the age of the house." (Doc. 49-1 at 85). Though Buvens also testified that "water penetration through the roof caused damages to the interior of the structure," which "would have had to travel through . . . the underlayment," Plaintiffs offer no evidence that it was the hurricane rather than natural degradation that allowed this penetration. (Doc. 49-1 at 83).

There remains, however, genuine issues of material fact as to the scope of damage sustained, which *was* a direct physical loss caused by the storm. For instance, there is a genuine dispute as to the scope of damage to the roof tiles. Defendant found only two tiles were damaged as a result of the hurricane, for which Plaintiffs were reimbursed. (Doc. 42 at ¶ 14; Doc. 42-3 at 3). However, Plaintiffs' expert, Byron Anderson, testified that he found forty-seven locations on the roof with tiles that were "broken, cracked, [and] displaced" because of Hurricane Ian, and each "damaged location[] may have more than one tile that's damaged." (Doc. 48-1 at 86–87, 165).[7]

---

[7] In their Complaint, Plaintiffs allege that Hurricane Ian caused damage to windows and doors on their property. (Doc. 5 at ¶¶ 11, 14). However, Plaintiffs' Response is devoid of any mention of these damages or citation to evidence supporting the damages. (*See generally* Doc. 54). The Court has no obligation "to sift through the record and make [Plaintiff]'s case[.]" *McGathey v. Safron*, No. 2:16-CV-916-FTM-38CM, 2017 WL 8772512, at *4 (M.D. Fla. Dec. 1, 2017) (quotation omitted); *Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-CIV, 2021 WL 1945821, at *6 n.10 (S.D. Fla. May 14, 2021) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain

14

In accordance with the Court's finding that Plaintiffs are entitled only to ACV, any damages must be limited to the areas that sustained a "direct physical loss." (Doc. 42-1 at 39); *see, e.g.*, *Bahama Bay II Condo. Ass'n v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1283 (M.D. Fla. 2019) (finding that a policy limited to direct physical loss does not cover undamaged property)*; CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2021 WL 877560, at *7 (M.D. Fla. Mar. 9, 2021) (same); *Magnolia Lane Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-24202-CIV, 2022 WL 3566881, at *6 (S.D. Fla. June 24, 2022), report and recommendation adopted, No. 19-24202-CIV, 2022 WL 2951650 (S.D. Fla. July 26, 2022) (finding that undamaged sections of roof were not covered where the policy was limited to direct physical loss).

Because there is a genuine dispute of material fact as to the scope of direct physical losses, the Court must deny summary judgment in part.

– *Remainder of page intentionally left blank* –

---

about the entry of a summary judgment order that did not consider an argument they [sic] chose not to develop for the district court at the time of the summary judgment motions.") (alterations in original)).  "The non-moving party 'may not rely merely on allegations or denials in its own pleadings,' but instead must come forward with 'specific facts showing a genuine issue for trial.'" *Doe v. Roe*, 500 F. Supp. 3d 1319, 1323 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

## CONCLUSION

For the reasons explained, the Court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment.

Given the Court's careful review of the record and legal arguments presented, *the Court strongly suggests* that the parties engage in settlement negotiations. If the parties notify the Court in a joint filing that they would like to engage in good faith settlement negotiations, the Court will both stay the deadlines in this case and offer a U.S. Magistrate Judge to conduct a settlement conference at no cost to the parties. Within 14 days from the filing date of this order, the parties are to file a joint notice requesting such. The notice is *not* to identify if a particular party opposes a settlement conference. It is simply to note that the parties jointly request a settlement conference, and that the parties jointly request the Court to appoint a U.S. Magistrate Judge to conduct a settlement conference. Having carefully reviewed the entire summary judgment record and the applicable law, the Court urges the parties to consider amicably settling this matter.

Accordingly, it is **ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 51) is **GRANTED in part** to the extent Defendant has established that no genuine dispute exists regarding Plaintiffs' limitation to ACV damages or Plaintiffs' lack of entitlement to RCV, matching, pre-existing damages, Ordinance or Law damages, or loss assessment damages and **DENIED in part** as to any other relief sought.

2. The parties are to file a joint notice within 14 days from the filing date of this order indicating whether they would like to proceed with a settlement conference conducted by a United States Magistrate Judge.

**ORDERED** in Fort Myers, Florida, on June 26, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE